WILLIAM H. HARPER, plaintiff in error, *vs.* THE COMMISSIONERS OF THE TOWN OF ELBERTON, defendants in error.

[1.] The part of the Constitution which says, that "trial by jury as heretofore used in this State, shall remain inviolate," does not apply to the case of a tax payer, who refuses, or fails to pay his tax.

[2.] A tax ordinance of the town of Elberton, declared, that the property on which the tax was to be assessed, was to be the property which the person taxed, had, *at the time* when *called on* for his tax.
*Held,* That this ordinance was valid.

[3.] The power of the town of Elberton, to tax, extends to debts.

[4.] The charter of the town of Elberton, originated in the Senate, and yet, i; is not in conflict with the 16th section of the 1st article of the Constitution, although, among the corporate powers, which such charter confers on the town, is the power to tax the towns-people.

Illegality, from Elbert Superior Court.    Decided by Judge THOMAS, at September Term, 1857.

The commissioners of the town of Elberton, issued a *fi. fa.* against William H. Harper, to collect the sum of $15 57,

the amount of tax assessed by said commissioners against Harper.

The marshal of the town levied the *fi. fa.* upon a buggy and harness belonging to Harper, who filed his affidavit of illegality upon the following grounds, to-wit:

1st. Because the *fi. fa.* issued without allowing deponent a trial by jury.

2d. Because the *fi. fa.* is not signed by three of the commissioners.

3d. Because the ordinance, by virtue of which said tax was assessed and levied, is illegal, in that no certain day is named or fixed upon which said tax is to be assessed and levied.

4th. Because the assessment is made upon debts and open accounts due to deponent.

5th. Because the Act of the General Assembly in pursuance of which said ordinance passed, is unconstitutional, in this, that said act originated in the Senate, and not in the House of Representatives, and because it did not receive the approval of the Governor until after the adjournment of the General Assembly.

6th. Because said tax was assessed against deponent on the 15th June, 1857.

The case was submitted on the following agreed statement of facts:

That there was no trial by jury, and the *fi. fa.* was not signed by three of the commissioners. That the ordinance of 9th February, 185–, by its terms levies a tax upon the people and property of the town of Elberton, computed and charged against them on no fixed and certain day, but on the day on which the tax receiver may apply to receive the tax returns, and he applied and obtained from Harper a statement of the property owned by him in said town, on the 15th June, 1857, and said tax is assessed on such debts and pro-

perty at that date.   The Act of 20th December, 1824, did originate in the Senate.

The presiding Judge, overruled all the grounds of illegality, and dismissed the same and ordered the *fi. fa.* to proceed.
To which decision counsel for defendant excepts.

VANDUZEN, for plaintiff in error.

T. W. THOMAS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The Court below overruled the affidavit of illegality.   Was the Court right in doing so?   That depends, of course, upon whether any of the grounds of the affidavit, were good or not.

The first of those grounds was, that the defendant in *fi. fa.* had not had a jury trial.

[1.] But the case was one of a kind in which, at the time of the adoption of the Constitution, jury trial had not been "used."   Therefore, it was one to which, the words of the Constitution,—"trial by jury as heretofore used in this State, shall remain inviolate," did not apply.

There was nothing then in the first of the grounds.

The second, was hardly insisted on.

We think, that the fifth section of the charter, gives the "board," power to authorize their "President" to issue such a *fi. fa.* as the one in this case.

Therefore, we consider the second ground insufficient.

The third ground was, that the ordinance by virtue of which, the tax was assessed, "named" "no certain day," as the day "upon which, said tax" was "to be assessed and paid."

[2.] But the charter does not require, that the ordinance should.   The charter does not say, that the tax is to be laid on such property as the taxed person owned on a particular

Harper vs. The Commissioners of the Town of Elberton.

day. The charter is silent on this point: in that respect, it differs from the general tax law. The charter merely says, that the board " may within the said town limits levy and collect in a summary manner, an annual poll tax, not exceed-- ing one dollar on each free person, and not exceeding twenty-- five cents on each slave, usually resident therein, and a tax not to exceed twenty-five cents, on every hundred dollars' value of real estate, stock in trade, and other personal estate,. or any other property, or thing, therein, that may, at the time· being, be taxable by the laws of this State; and also a tax not exceeding five dollars for each day, on all itinerant ex- hibitions and performances therein for money." *Daw. Com*· 454. These words give to the board a general power to tax within certain limits; nor do they select a particular day,. and declare, that the tax to be levied of a man, shall be as- sessed on the property which he owned on that day. And this is but committing these matters to the discretion of the board.

We regard the third ground, then, as insufficient.

The fourth ground was, that " the assessment" was " made upon debts and open accounts, due to defendant."

The charter, as we have seen, says, that the power to tax, shall extend to " any other property or thing therein, that may, at the time being, be taxable by the laws of this State."

At the time when this tax was laid, " debts and open ac- counts" were things taxable by the laws of this State. *Acts of* 1851, 288. *Acts of* 1853-4, 109.

[3.] Therefore, the power to tax extended to debts and open accounts.

We were asked to say, whether this power extended to debts held on persons *not residing in the town.* There is nothing in the record, that raises this question. We, there- fore, merely say, that if the question were up, we should be inclined to hold, that the power does *not extend to* such debts.

We hold the fourth ground insufficient.

[4.] The fifth ground was, that the charter "originated in the Senate, and not in the House of Representatives;" and that it "did not receive the approval of the Governor, until after the adjournment of the General Assembly."

The Constitution says that "all bills for raising revenue, or appropriating moneys, shall originate in the House of Representatives." - *Art. I, sec.* 16.

But we do not consider an act incorporating a town, an act "for raising revenue," although the act, may, among the many powers it confers on the town, confer the power to tax. In such a case, taxing is not the end : it is a mere incident. Besides, the delegation of the power to tax, and the laying of a tax, are two things. This act does the first; the last, it does not do. The constitutional provision applies to an act which does the last, and does not apply to an act which does the first.

The latter part of this ground, was not insisted on. There is nothing in the Constitution that forbids the Governor to sign bills after the adjournment of the General Assembly.

We, therefore, hold the fifth ground, insufficient.

The sixth and last ground, is the same in substance as the third.

We think, therefore, that none of the grounds was sufficient; and, consequently, we must affirm the judgment of the Court below, overruling the affidavit.

*Judgment affirmed.*