168 So. 127

STATE v. BANNER CLEANERS & DYERS, Inc.

No. 33325.

March 30, 1936.

Rehearing Denied April 27, 1936.

L. R. Wertheimer, of New Orleans, for appellant.

Charles J. Rivet, of New Orleans, for the State.

FOURNET, Justice.

The state of Louisiana proceeded by rule to collect an occupational license tax from the Banner Cleaners & Dyers, Inc., under the provisions of section 25 of Act No. 190 of 1932, for the years 1932 and 1933, plus penalties, attorney's fees and costs. In answer to the rule, the defendant pleaded exceptions of no cause or right of action, based upon the alleged unconstitutionality of section 25 of the act.

The judge of the lower court overruled the exceptions of no cause or right of action and rendered judgment in favor of the state of Louisiana for the amount found to be due, plus penalties and attorney's fees, with recognition of a lien and privilege upon the defendant's property, and enjoined it from the further pursuit of the business until satisfaction of the judgment. The defendant has appealed.

The quantum of the tax is not in dispute. The facts in the case, as disclosed by the record, show that the defendant is a Louisiana corporation, operating a steam laundry and a cleaning and pressing business in the city of New Orleans, in which business machinery is used and mechanics are employed with some employees using hand labor aided by tools and machinery.

Counsel for defendant contends that section 25 of Act No. 190 of 1932, in the light of section 8, article 10, Constitution of 1921, as interpreted by this court in our recent decisions, i. e., State v. Chicago Hat Works, 174 La. 814, 141 So. 844; State v. Up-To-Date Shoe Repairing Co., Inc., 175 La. 917, 144 So. 714; State v. Tung, 183 La. 281, 163 So. 101, 100 A.L.R. 1030, and State v. Crescent City Laundries, Inc., 184 La. 17, 165 So. 315, is violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, in that the exemption is based upon the character of ownership without any distinction as to the business taxed. In other words, his contention is that the exemption is based on whether the owner is a working owner or a nonworking owner and not in the difference in the character of the business conducted, and, therefore, certain individuals are exempt from the tax, while other individuals and corporations must pay.

Section 8, article 10, Constitution of 1921, provides:

"License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, *except* clerks, laborers, ministers of religion, school teachers, graduated trained nurses, *those engaged in mechanical * * * pursuits*." (Italics ours.)

The pertinent part of section 25 of Act No. 190 of 1932 reads:

"That for every individual, firm, association or corporation carrying on the profession or business of steam dyeing, steam cleaning, steam pressing, or the business of steam or electric laundering, the license shall be based upon the gross annual receipts from such profession or business, and shall be fixed and graded as follows, to-wit."

The above-quoted provision of the Constitution of 1921 is also found in the Constitutions of 1879, 1898, and 1913, and the very first time the construction thereof was presented to this court for consideration we pointed out that the framers of the Constitution intended to exempt "those persons who are engaged, from day to day, in the performance of manual labor in mechanical * * * pursuits." Theobalds v. Conner, 42 La.Ann. 787, 7 So. 689, 690.

In the case of State v. Up-To-Date Shoe Repairing Co., Inc., 175 La. 917, 144 So. 714, 715, we cited with approval from the case of Theobalds v. Conner, supra, and said:

"A 'mechanic,' according to Worcester, is one employed in mechanical or manual labor; and 'mechanical' is defined to be 'employment in manual labor.' Taking the phrase 'engaged in mechanical pursuits' according to these definitions, *and it is clear that the framers of the constitutional article intended to relieve from license those persons who are engaged, from day to day, in the performance of manual labor in mechanical or agricultural pursuits;* and that the master builders and contractors, who employ others to do the work which they merely superintend, should, like other professional men, pay the license tax." (Italics ours.)

A three-judge federal court commented with approval from our holding in the Up-To-Date Shoe Repairing Company Case, supra, in the case of White Cleaners & Dyers et al. v. Hughes (D.C.) 7 F.Supp. 1017, 1020, as follows:

"This jurisprudence seems to be fully warranted by the language of the exempting clause itself. It appears to us that the author when he wrote the clause had in mind natural persons and not artificial persons. The exemption is granted to clerks, laborers, ministers of religion, school teachers, and graduated trained nurses, all natural persons, and also to those (natural persons) engaged in mechanical pursuits.

"If, as the jurisprudence holds, master builders and other persons who employ mechanics to do their work are amenable to license taxes, we see no good reason why corporations who also employ mechanics to do their work should not likewise be amenable to such taxes."

In State v. Charles Tung, 183 La. 281, 163 So. 101, 102, 100 A.L.R. 1030, we said that "The purpose of the exemption is to encourage the mechanic who actually works at his trade with his own hands, although the exemption is not denied him if he obtains the help of other mechanics, and not to exempt and protect an employer who profits by the use of the mechanic's labor and skill in the conduct of his own business."

In our recent decision in the case of State v. Crescent City Laundries, 184 La. 17, 165 So. 315, 317, the defendant was engaged in the steam dyeing, laundering, cleaning, and pressing business, and when sued by the state for occupational license taxes under section 25 of Act No. 190 of 1932, the corporation pleaded the constitutional exemption accorded to those engaged in mechanical pursuits under section 8, article 10 of the Constitution of 1921, and, in the alternative, if such exemption was denied, that the section of the act was unconstitutional because defendant was deprived of the benefit of the equal protection clause of the Fourteenth Amendment to the Federal Constitution.

In denying defendant the exemption under section 8 of article 10 of the Constitution of 1921, we said:

"We have reached the same conclusion in this case that we reached in the case of State, v. Tung, hereinabove referred to, namely, that section 25 of Act No. 190 of 1932 is not violative of section 8 of article 10 of the State Constitution, and that the defendant is not entitled to the exemption granted by the constitutional provision."

We disposed of the defendant's alternative plea in that case as follows:

"Our conclusion is that the statutory provision applicable to defendant's business, as construed by the decisions of this court, is not violative of the equal protection clause of Federal Constitution. Quong Wing v. Kirkendall [223 U.S. 59, 32 S.Ct. 192, 193, 56 L.Ed. 350], hereinabove referred to. See, also, State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464."

The Supreme Court of the United States, in the case of Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350, said:

"The case was argued upon the discrimination between the instrumentalities employed in the same business and that between men and women. * * * *A state does not deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such a way as to favor certain industries or forms of industry.* Like the United States, although with more restriction and in less degree, a state may carry out a policy, even a policy with which we might disagree. McLean v. Arkansas, 211 U.S. 539, 547, 29 S.Ct. 206, 53 L.Ed. 315, 319; Armour Packing Co. v. Lacy, 200 U.S. 226, 235, 26 S.Ct. 232, 50 L.Ed. 451, 456; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 562, 22 S.Ct. 431, 46 L.Ed. 679, 690. It may make discriminations, *if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary, as was illustrated in American Sugar Ref. Co. v. Louisiana,* 179 U.S. 89, 92, 95, 21 S.Ct. 43, 45 L.Ed. 102, 103, 105; Williams v. Fears, 179 U.S. 270, 276, 21 S.Ct. 128, 45 L.Ed. 186, 189; W. W. Cargill Co. v. Minnesota, 180 U.S. 452, 469, 21 S.Ct. 423, 45 L.Ed. 619, 627. It may favor or discourage the liquor traffic or trusts. The criminal law is a whole body of policy on which states may and do differ. *If the state sees fit to encourage steam laundries and discourage hand laundries, that is its own affair."* (Italics ours.)

And in the course of the opinion, the court stated further:

"If Montana deems it advisable to put a lighter burden upon women than upon men with regard to an employment that our people commonly regard as more appropriate for the former, the 14th Amendment does not interfere by creating a fictitious equality where there is a real difference. *The particular points at which that difference shall be emphasized by legislation are largely in the power of the state."* (Italics ours.)

In the case of Ft. Smith Lumber Co. v. State of Arkansas, 251 U.S. 532, 40 S.Ct. 304, 305, 64 L.Ed. 396, the United States Supreme Court held that it "is within the power of a State, so far as the Constitution of the United States is concerned, to tax its own corporations in respect of the stock held by them in other domestic corporations, although unincorporated stockholders are exempt. A State may have a policy in taxation," citing Quong Wing v. Kirkendall, 223 U.S. 59, 63, 32 S.Ct. 192, 56 L.Ed. 350.

The court, in the same case, said:

*"If the State of Arkansas wished to discourage but not to forbid the holding of stock in one corporation by another and sought to attain the result by this tax, or if it simply saw fit to make corporations pay for the privilege, there would* be nothing in the Constitution to hinder. A discrimination between corporations and individuals with regard to a tax like this cannot be pronounced arbitrary, although we may not know the precise ground of policy that led the State to insert the distinction in the law." (Italics ours.)

A review of all the cases touching upon the subject-matter of exemption from payment of license tax discloses that the sole distinction made between those who are subject to the license tax and those who are not is that the latter class of persons actually perform the manual labor themselves, while the former class of persons, whether natural or artificial, carry on the business through other persons who are hired for that purpose. The distinction, such as it is, is reasonable and substantial, and, consequently, is not violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

For the reasons assigned, the judgment of the lower court is affirmed.

O'NIELL, C. J., absent.